IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 13 |
| GARY LOPATKA : | |
| : | CASE NO. 5-08-bk-52181 RNO |
| Debtor : | |

*****************************************************************************

| | |
|---|---|
| CHARLES J. DEHART, III, STANDING : | |
| CHAPTER 13 TRUSTEE : | |
| : | |
| Movant : | |
| : | |
| v. : | |
| : | |
| GARY LOPATKA : | |
| : | |
| Respondent : | |

# **OPINION**[1]

This contested matter was commenced by an objection to confirmation filed by the Chapter 13 Trustee ("Trustee"). This Opinion deals with the Trustee's objection pertaining to plan length. Presently before this Court is the issue of whether the plan of an above median income debtor with a negative projected monthly disposable income can be confirmed over an objection if the plan does not provide full payment of all allowed unsecured claims and is for less than five years. For the reasons stated herein, this Court overrules the Trustee's objection as it pertains to plan length.

**I.     Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1)&(2)(A)(B). This is a core proceeding under 28 U.S.C. § 157(L).

---

[1] Drafted with the assistance of William C. Blasses, Esq., Law Clerk

1

## II. History and Facts

Gary Lopatka (hereinafter "Debtor") filed a Chapter 13 voluntary petition on August 1, 2008. Thereafter, on September 3, 2008, a Chapter 13 plan was filed. Notably, the plan provides for payments of $320.00 per month for thirty-six months. Prior to confirmation, the Trustee filed an objection to confirmation of the Chapter 13 plan, naming various objections. At a hearing on November 13, 2008, the parties stipulated that the objection to be decided was whether the plan length should be five years or the three years proposed by the Debtor. Furthermore, the parties agreed that the Debtor's disposable income, as calculated under the means test, is negative.

## III. Discussion

### A. The Trustee's Objection.

The Debtor and Trustee dispute whether the requirements of 11 U.S.C. § 1325(b)(1)(B)[2] have been satisfied here. I appreciate the tug that many courts have felt to determine whether "projected disposable income" under § 1325(b)(1)(B) should be differentiated from "disposable income" under § 1325(b)(2). Some courts have held that a projected disposable income is a forward looking concept, so that disposable income per the means test creates only a rebuttable presumption as to "projected disposable income" for purposes of overruling an objection under § 1325(b)(1)(B). *In re Lanning*, 545 F.3d 1269, 1282 (10th Cir. 2008); *In re Jass*, 340 B.R. 411, 416 (Bankr. D.Utah 2006). These courts hold that it is sometimes appropriate to make adjustments from the means test's formulaic results to account for circumstances like a post-

---

[2]Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

2

petition job loss or promotion. Other courts have found the means test's results to be the sole determining factor in calculating a debtor's projected disposable income. *In re Kolb*, 366 B.R. 802, 818 (Bankr. S.D.Ohio 2007); *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006) ("The court finds that, in order to arrive at *'projected disposable income,'* one simply takes the calculation mandated by § 1325(b)(2) and does the math.").

In rendering this decision, I do not need to construe the meaning of "projected disposable income". As detailed below, I am only deciding the trustee's objection to the thirty-six month term of the Debtor's plan.

**B.     11 U.S.C. § 1325(b).**

The Trustee's objection to the plan is that it does not satisfy the requirements of § 1325(b) which provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's *projected disposable income* to be *received in the applicable commitment period* beginning on the date that the first payment is due under the plan *will be applied to make payments* to unsecured creditors under the plan." (Emphasis Added).

The term "applicable commitment period" is further defined in § 1325(b)(4) as:

> (4) For purposes of this subsection, the "applicable commitment period"--
> (A) subject to subparagraph (B), shall be--
> (i) 3 years; or
> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined,

3

> > > when multiplied by 12, is not less than--
> > > > (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
> > > > (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
> > > > (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4; and
> > > (B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

As made clear by § 1325(b)(4), the applicable commitment period for the purposes of § 1325(b) is based solely on a debtor's "current monthly income." Current monthly income is defined by § 101(10A) as:

> (10A) The term "current monthly income" --
> > (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
> > > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

4

>                            (ii) the date on which current income is
>                            determined by the court for purposes of this
>                            title if the debtor does not file the schedule
>                            of current income required by section
>                            521(a)(1)(B)(ii); and
>                   (B) includes any amount paid by any entity other
>                   than the debtor (or in a joint case the debtor and the
>                   debtor's spouse), on a regular basis for household
>                   expenses of the debtor or the debtor's dependents
>                   (and in a joint case the debtor's spouse if not
>                   otherwise a dependent), but excludes . . .

For the purposes of § 1325(b)(4), the current monthly income is multiplied by twelve and then compared with the median family income for the applicable state. *See* § 1325(b)(4)(A)(i)&(ii). In the present case, it is uncontraverted that the Debtor's current monthly income multiplied by twelve is above the median family income. Therefore, the applicable commitment period for the Debtor is five years.

        C.       **The "Applicable Commitment Period" and Plan Length.**

The present dispute revolves around whether this Court can overrule the Trustee's objection as to plan length so long as the Debtor's plan provides that all of his projected disposable income for the applicable commitment period is applied to make payments to unsecured creditors. The Debtor is above the median in current monthly income, thus necessitating a five year applicable commitment period.. It has also been stipulated that the Debtor has negative disposable income calculated on Form B22C pursuant to the means test.

I, like many other courts, find the statutory view within § 1325 to be rather murky. (*In re Frederickson*, 545 F.3d 652, 656 (8th Cir. 2008) (". . . the language of 11 U.S.C. § 1325(b) is not at all clear.")).

It does generally seem clear that, absent payment in full to unsecured creditors, a Chapter

5

Case 5:08-bk-52181-RNO    Doc 24    Filed 02/17/09    Entered 02/17/09 13:20:46    Desc
                      Main Document      Page 5 of 13

13 debtor should pay during the plan a sum equal to his projected disposable income times the number of months in the applicable commitment period. However, this is not to say that the duration of the plan must necessarily be three or five years. "The applicable commitment period does not require that the debtor actually make payments for any particular period of time." *In re Brady*, 361 B.R. 765, 776-777 (Bankr. D.N.J. 2007).

Debtor's counsel argues that a strict construction of the statute yields an interpretation that the statute requires that the plan include all amounts of projected disposable for the relevant applicable commitment period. Thus, so long as a debtor provides that total amount in the plan, the plan can vary in length subject to other applicable restrictions within the Bankruptcy Code. The Trustee, however, argues that the term "applicable commitment period" implies a period of required plan duration. Therefore, I must determine whether § 1325(b)(1)(B)'s reference to the "applicable commitment period" creates a plan length requirement.

The Trustee's brief points to § 1325(b)(1)(B)'s use of words that designate a length of time. The argument follows that the plain meaning of words such as "years" and "period" imply a time requirement and has been adopted by some bankruptcy courts. *See e.g., In re Heyward*, 386 B.R. 919, 923 (Bankr. S.D.Ga. 2008) ("The term 'applicable commitment period' 'uses a word with temporal meaning: "period" means a "chronological division," ' 'length of time', 'portion of time', or a 'length of existence.' " (citations omitted)); *In re Anderson*, 383 B.R. 699, 712 (Bankr. S.D.Ohio 2008) ("By its plain language, applicable commitment period has a temporal aspect.").

Other courts and sources of authority have construed § 1325(b)(1)(B) as not imposing a plan length requirement. *See e.g., In re Brady*, 361 B.R. at 777 ("Section 1322(d)(1) and (d)(2)

6

specify the maximum length of a plan, but do not specify the minimum number of months required"); *In re Kagenveama*, 541 F.3d 868, 876 (9th Cir. 2008) ("There is no language in the Bankruptcy Code that requires all plans to be held open for the *'applicable commitment period'*).

A learned commentator, Judge Keith M. Lundin, has noted:

> The applicable commitment period does not require that the debtor actually make payments for any particular period of time. Rather, it is the multiplier in a formula that determines the *amount* of disposable income that must be paid to unsecured creditors.

6 Keith M. Lundin, Chapter 13 Bankruptcy § 500.1, 3d Ed. 500-2 (2000 & Supp. 2006).

I believe it bears repeating that the applicable commitment period is pegged to a debtor's "current monthly income" ("CMI"). Section 101(10A) takes a "rearview mirror" approach to CMI, calculating it as the average of the debtor's income for the six months prior to bankruptcy filing. Judge Lundin also wrote:

> Because CMI is an artificial construct based on the historical income of the debtor during the six months before the month in which the petition was filed, there will be many Chapter 13 cases in which changed financial circumstances dictate a plan length that is longer or shorter than the maximum generated by § 1322(d).

6 Keith M. Lundin, Chapter 13 Bankruptcy at 500-6.

I believe this quote again illustrates that the formulaic components of the means test will sometimes yield arithmetic results which are at odds with a debtor's actual financial circumstances. Depending upon post-petition circumstances, employing the CMI may either exaggerate or understate the debtor's available income. Similarly, employing the national and local expense deductions referenced in § 707(b)(2) may, likewise, differ from the debtor's actual expenses. Within such a scheme, one must plumb deeply to discern Congress' intent.

7

### D. Considering § 1325(b) in the Context of the Bankruptcy Code.

As reiterated by the Third Circuit in *In re Price*, statutory interpretation begins with looking first to the statute's text to discern whether a clear meaning exists. *In re Price*, 370 F.3d 362, 368-69 (3d Cir. 2004) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). The Court went on to note that the mere existence of multiple constructions alone did not make the statute ambiguous. *Id*. Rather, " '[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' " *In re Price*, 370 F.3d at 369 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).

#### 1. § 1322(d)

In the present case, it is helpful to analyze a few Bankruptcy Code sections pertaining to confirmation to better understand the context of § 1325(b)(1)(B). First, § 1322(d) sets forth a maximum plan length:

> (d)(1) If the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
>   (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>   (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>   (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4,
> the plan *may not* provide for payments over a period that is longer than 5 years.

>    (2) If the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is less than--
>       (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>       (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>       (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4,
>    the plan *may not* provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court *may not* approve a period that is longer than 5 years.
>    (Emphasis added)

In both § 1322(d)(1) and (d)(2), the phrase "the plan may not provide for payments over a period that is longer than . . ." is unambiguous. The mandatory nature of the provision is strengthened by § 102(4) which indicates that " 'may not' is prohibitive, and not permissive;".

In the case of an above median debtor, such as in the present case, the statute requires that the plan payments not extend for not more than five years. § 1322(d)(1). However, in the present matter, the Trustee argues that § 1325(b)(1)(B) also governs plan length and that § 1325(b)(4)(B) helps to set a *minimum* plan length of "not less than 5 years". Section 1322 does set mandatory requirements for Chapter 13 plans. I do not find that setting a maximum plan length sets a minimum plan length any more than setting a maximum speed limit imposes a minimum speed limit.

In considering the interplay between § 1322 and § 1325, the Court also notes other rules of statutory construction. "It is a well established canon of statutory construction that 'provisions in different statutes should, if possible, be interpreted so as to effectuate both

9

provisions.' " *In re Udell*, 454 F.3d 180, 184 (3d Cir. 2006) (quoting *Cutaiar v. Marshall*, 590 F.2d 523, 530 (3d Cir. 1979)). Statutes also should not be construed in a way that would make part of the statutes either superfluous or redundant. *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 383 (Bankr. W.D.Pa. 2008) (citing *Connecticut National Bank v. Germain*, 503 U.S. 249, 252-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). Interpreting § 1325(b)(1) to create a minimum temporal requirement for plan length seems at odds with § 1322(d), which only sets a maximum plan length. If § 1325(b) requires a minimum plan length of five years, what then is the purpose of § 1322(d) setting a maximum plan length of five years for an above median debtor?

### 2. § 1325(b)(4)(B).

Applying the same concepts of statutory construction, some cases which find a required minimum plan length in § 1325(b)(1)(B) key on the language of § 1325(b)(4)(B) which allows for an applicable commitment period of less than three to five years so long as the plan provides for full payment of all allowed unsecured claims. *In re Heyward*, 386 B.R. at 923. The argument follows that § 1325(b)(4)(B) would be surplusage if no temporal requirement existed. *In re Heyward*, 386 B.R. at 923 (citing *In re Slusher*, 359 B.R. 290, 303 (Bankr. D.Nev. 2007)). However, the argument fails under closer examination. Consider a case in which an above median debtor has the ability to pay all allowed unsecured claims in full in less than five years. If the requirement of § 1325(b)(1)(B) is merely that the debtor devote all projected disposable income for the applicable commitment period and no temporal requirement existed, the construction of § 1325(b)(4)(B) would be that the debtor would not need to pay more than the total value of all allowed unsecured claims. That is to say, § 1325(b)(4)(B) would have full

Case 5:08-bk-52181-RNO    Doc 24    Filed 02/17/09    Entered 02/17/09 13:20:46    Desc
Main Document      Page 10 of 13

effect as a cap on the amount that the debtor would have to pay in a Chapter 13 plan pursuant to § 1325(b)(1)(B). Instead of paying three or five years' worth of projected disposable income, which could be greater than the sum of all allowed unsecured claims, the provision would allow the debtor to instead pay the amount of all allowed unsecured claims. If a debtor is able to accomplish this in fewer months than the applicable commitment period equals, I see nothing in the statute which prevents it.

### 3. Consideration of a Plan Length Requirement in Light of § 1329.

While not bearing on initial plan confirmation, § 1329 permits debtors, unsecured creditors, and trustees to modify a Chapter 13 plan after confirmation. While subsection (a) provides certain situations or objectives for which modification is allowed, subsections (b) and (c) include the applicable requirements for plan modification. The sections read:

> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and *the requirements of section 1325(a)* of this title apply to any modification under subsection (a) of this section.
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.
> (Emphasis added)

Section 1329(b) incorporates specific subsections of §§ 1322, 1323, and 1325, but notably has no reference to § 1325(b). Section 1329(a)(1) & (2) allow a party to "increase or reduce the amount of payments on claims of a particular class provided for by the plan" and "extend or reduce the time for such payments." Subsection 1329(c) merely sets a limit to the length of the

11

plan, not a minimum. Thus, the provisions of § 1329 allow a debtor to modify the length of a plan post confirmation, subject to the specified Bankruptcy Code sections. *See e.g., In re Davis*, 392 B.R. 132, 147 (Bankr. E.D.Pa. 2008) (discussing the lack of ". . . any express reference to § 1325(b) . . ." in § 1329 and noting a series of decisions that construed § 1329 to allow debtors to reduce plan length). In the present case, construing § 1325(b)(1) as necessitating a minimum plan length requirement would be impractical and illusory given that the Debtor could subsequently proceed to modify the plan to a shorter length pursuant to § 1329.

    E.    **Construing § 1325(b)(1)(B) According to its Natural Language and Consistent with the Rest of the Bankruptcy Code.**

As discussed above, statutory interpretation can start and end when the meaning of the statute is clear. The natural language of § 1325(b)(1)(B) sets forth only a requirement that a debtor make payments to unsecured creditors from projected disposable income received. It does not impose a required plan length.

Let me be clear, having a temporal reference is not the same as imposing a temporal requirement. Section 1325(b)(1)(B) is a forward looking provision that does point to a temporal period of time that can be three or five years into the future. However, that temporal period is a reference to define the boundaries of the disposable income to be included in the plan. For example, the statute requires an above median debtor to provide for five years of projected disposable income in the plan. It does not require the plan to extend for any certain length of time.

The doctrine of judicial restraint suggests that a court should decide the fewest issues necessary to resolve the subject dispute. *Morse v. Frederick*, 127 S.Ct. 2618, 2641-42 (U.S. 2007) (Justice Alito concurrence); *PDK Labs., Inc. v. Drug Enforcement Admin.*, 362 F.3d 786,

12

799 (C.A.D.C. 2004) (Roberts, J., concurring in part and concurring in judgment " '. . . the cardinal principle of judicial restraint' is that 'if it is not necessary to decide more, it is necessary not to decide more.' ").

Today, I only decide that the Debtor may propose a plan which is for a shorter duration than the applicable commitment period. My resolution of the Trustee's objection would be the same whether a debtor had positive or negative disposable income. Therefore, I do not address today the question of whether "projected disposable income" and "disposable income" are the same or different. Similarly, I make no finding concerning the adequacy of the Debtor's proposed payments into the plan. Nor do I make any finding concerning the Debtor's good faith in proposing the subject plan.

## IV. Conclusion

For the reasons set forth above, I hereby overrule the Trustee's objection to confirmation. An Order will be entered consistent with the foregoing Opinion.

Date: February 17, 2009

_____
Robert N. Opel, II, Bankruptcy Judge (BI)

*This opinion is electronically signed and filed on the same date.*

13